COMMONWEALTH OF VIRGINIA, *ex rel.*, ETC.

V.

LOTZ REALTY COMPANY, INC., ET AL.

Record No. 860230

January 13, 1989

Present: Carrico, C.J., Poff,* Compton, Stephenson, Russell, Thomas, and Whiting, JJ.

* Justice Poff participated in the hearing and decision of this case prior to the effective date of his retirement on December 31, 1988.

*Richard B. Zorn, Senior Assistant Attorney General (Mary Sue Terry, Attorney General; R. Claire Guthrie, Deputy Attorney General; Patrick A. O'Hare, Senior Assistant Attorney General,* on briefs), for appellant.

*Sidney H. Kirstein (McRorie, Kirstein, McMahon & Gay,* on brief), for appellees.

*Amicus Curiae:* Anti-Defamation League of B'nai B'rith, et al. (Murray J. Janus; Justin J. Finger; Jeffrey P. Sinensky; Abigail T. Kelman; Jill L. Kahn; Bremner, Baber & Janus, on briefs), for appellant.

CARRICO, C.J., delivered the opinion of the Court.

Code § 36-88, part of the Virginia Fair Housing Law, provides:

It shall be an unlawful discriminatory housing practice, because of race, color, religion, national origin, sex, elderliness, parenthood or handicap for any person having the right to sell, rent, lease, control, construct, or manage any dwelling constructed or to be constructed, or any agent, independent contractor or employee of such person:

  . . . .

(3) To make, print or publish, or cause to be made, printed or published any notice, statement or advertisement, with respect to the sale or rental of a dwelling that *indicates any*

*preference,* limitation or discrimination, or an intention to make any such preference, limitation, or discrimination.

(Emphasis added.)

In the 1970s, Paul K. Lotz and Lotz Realty Company, Inc. (Lotz or the respondents), real estate brokers in Newport News, began using Christian symbols and slogans in their real estate advertising. In 1980, a complaint was made to the Virginia Real Estate Commission (the Commission)[1] by the Virginia Regional Office of the Anti-Defamation League concerning the advertising used by Lotz. The Commission investigated the complaint and found there was reasonable cause to believe that Lotz "was in violation of the fair housing law."

On June 21, 1983, the Commonwealth, at the relation of the Commission, filed a bill of complaint against Paul Lotz and his realty company. The bill alleged:

The respondents have used and continue to use symbols, words, phrases and statements in published advertisements, statements, signs, notices and other advertising with respect to the sale or rental of dwellings which particularly appeal to persons of Christian religious beliefs and which would indicate and have indicated to persons of other religious beliefs that the respondents have a preference for dealing with or would limit their dealings to persons of Christian religious beliefs [in violation of Code § 36-88(3)].

The Commission prayed that the respondents be permanently enjoined from violating Code § 36-88(3).

The respondents filed an answer and cross-bill. They admitted that they used certain words and symbols in a letterhead but denied that this "advertising alone" indicated a preference for any religious group or a desire to limit their dealings to persons holding Christian beliefs.

The respondents attached to their cross-bill a copy of the letterhead in question. A caricature of a fish[2] encompassing the words

---

[1] By Acts 1985, ch. 448, the name of the Virginia Real Estate Commission was changed to the Virginia Real Estate Board. The 1980 complaint against the respondents was filed with the Commission which was then, as the Board is now, vested with authority to receive and investigate complaints of violations of the Fair Housing Law. Code § 36-94.

[2] Testimony showed that the caricature of a fish is a Christian symbol.

"Jesus Is Coming" is displayed between the name "Lotz Realty Co., Inc." and a photograph of Paul Lotz.

The respondents prayed for a declaration pursuant to 42 U.S.C. § 1983 that they "have a constitutionally protected right to employ the slogans and symbols utilized in [the letterhead] in the course of their real estate business so long as [they] do not in fact discriminate." They also prayed that the Commission be enjoined from bringing further administrative or judicial proceedings against them "on account of their . . . advertising."

The trial court held that the portion of the respondents' cross-bill which sought a declaratory judgment concerning "the lawfulness of [the respondents' letterhead] ought to be heard and decided . . . prior to any ruling on [the Commission's] Bill of Complaint." The court ruled that "the burden of going forward would be on the Respondents, while the burden of proof would be on the [Commission]."

On February 14, 1984, the trial court heard the evidence submitted by the parties and, in a memorandum opinion, framed the issues as follows:

(1) Are the Respondents prohibited from utilizing the caricature of a fish encompassing the words "Jesus Is Coming" on their letterhead . . . by virtue of Section 36-88(3)?
(2) Does Section 36-88(3) violate the Respondents['] constitutional right[s] of freedom of speech and religion as guaranteed by the Constitution?

The court stated in its memorandum opinion that because Code § 36-88(3) "is penal in nature it must be construed strictly against the State and favorably to the liability of the citizens." The court then held that the Commission had failed to carry the burden of proving that "the caricature of a fish encompassing the words 'Jesus Is Coming' violates or . . . is prohibited by the statute."

The court concluded that, because of its holding, "consideration of the constitutional questions raised [is] unnecessary." On May 16, 1984, the court entered a decree holding that the respondents "may lawfully utilize the said [letterhead] advertisement in connection with their real estate business."

In August 1984, the trial court impanelled a jury on an issue out of chancery to consider the Commission's bill of complaint.

The jury was unable to agree, however, and the court declared a mistrial.

A hearing on the Commission's bill of complaint was rescheduled for January 10, 1985, this time without a jury. The parties agreed that the exhibits admitted at the two previous trials would be admitted again. The court refused to consider, however, certain expert testimony which had been introduced by the Commission at the August 1984 hearing.

The exhibits introduced by the Commonwealth included advertisements placed by Lotz in newspapers, the yellow pages of the local telephone book, and a magazine, as well as on an area road map, on signs at the Lotz real estate office, and on signs at other locations in the Newport News area. Most of the advertisements included the caricature of a fish encompassing the words "Jesus Is Coming." Other slogans were used, including "Christians Tell A Friend" or merely "Tell A Friend," and the single word "Christians" was prominently displayed in some advertisements.[3]

A disclaimer appeared in a number of advertisements. The disclaimer read: "We list, sell and rent any property without any preference, limitation or discrimination based on race, color, religion, sex or national origin or any intention to make such a preference, limitation or discrimination."

On April 2, 1985, the trial court entered a decree finding that the Commission had failed to carry its burden of proving a violation of Code § 36-88(3) and holding that the relief sought by the Commission should be denied. The court stated in the decree that, "[h]aving reached this decision, it is unnecessary to decide the constitutional issue[s] raised in the respondents' cross-bill."[4] The court suspended this decree pending a decision on the respondents' entitlement to attorney's fees.[5] On December 19, 1985, the court vacated the suspension and entered a final decree, which included an award of attorney's fees to the respondents.

On appeal, the Commission's attack upon the trial court's finding of no violation is extremely narrow. The sole assignment of

---

[3] Paul Lotz explained that the members of his church "are commissioned to testify and witness to the world that [Jesus Christ] is our Savior."

[4] The respondents have assigned cross-error, preserving the constitutional issues raised in their cross-bill.

[5] One of the respondents' newspaper advertisements stated: "Please pray for us. The ADL, ANTI DEFAMATION LEAGUE OF BNAI BRITH, A JEWISH ORGANIZATION, is suing us for their attorney fees."

error on the subject reads: "The Court erred in ruling that [the respondents' advertisements] do not *on their face* individually and collectively establish that Lotz violated § 36-88(3)." (Emphasis added.) The Commission's argument on brief is similarly narrow.

There was no dispute, the Commission says, "that Lotz was a real estate broker who came within the purview of the statute," that the advertisements in question were used to promote the sale of dwellings, and that the advertisements clearly indicated "a religious preference or an intention to make a preference based on religion." Hence, the Commission concludes, the advertisements are *"per se"* violations of the statute, and oral testimony was unnecessary except "to clarify and provide historical perspective that was not otherwise available."

We reject the Commission's per se argument. In the first place, the argument is completely inconsistent with the position taken by the Commission in the trial court. Prior to the January 10, 1985 bench trial, the respondents moved for summary judgment on the ground that the advertisements as a matter of law "do not violate the statute and should not and need not be submitted to [a] jury."

Opposing the motion for summary judgment and arguing for a jury trial on an issue out of chancery, counsel for the Commission told the trial court that "[t]he evidence is in conflict here," that the advertisements "certainly . . . raise factual issues whether they indicate a preference or not," and that "a jury is appropriate to look at the testimony and look at the particular statements or advertisements and decide whether or not they indicate a preference on the basis of religion." Counsel also told the court that, "upon all the evidence," a "jury could find on behalf of the [Commission]."[6] Hence, counsel concluded, "summary judgment is inappropriate."[7] Nowhere in its argument did the Commission take the position that the respondents' advertisements established *on their face* a violation of the Fair Housing Law.

"[P]arties litigant may not [take] inconsistent positions at different stages of . . . proceedings in court." *Kelley v. Commonwealth*, 140 Va. 522, 536, 125 S.E. 437, 441 (1924). " 'This is an

---

[6] Of course, the statement in the text represents a tacit concession that the jury could just as well find for the respondents.

[7] The trial court denied the respondents' motion for summary judgment as well as the Commission's request for a jury trial on an issue out of chancery and proceeded with a bench trial on the issues raised by the Commission's bill of complaint. The Commission makes no point of the denial of its request for a jury trial on an issue out of chancery.

appellate court, and it hears cases on the theory upon which they were tried in the lower court, reviewing those points properly raised, decided, and preserved.' " *Pearsall* v. *Richmond R&H Authority*, 218 Va. 892, 908, 242 S.E.2d 228, 237 (1978) (*quoting Strauss* v. *Princess Anne Marine*, 209 Va. 217, 221-22, 163 S.E.2d 198, 202 (1968)).

■ The Commission took the position in the trial court that the question whether the respondents' advertisements indicated a preference was an issue of fact and not of law. The trial court agreed with this position and, accordingly, denied the respondents' motion for summary judgment. The Commission will not be permitted to contend now that the question is one of law and not of fact, or to advance a theory different from the one upon which the case was tried below, or to ask this Court to decide a question the trial court was not asked to decide.

Furthermore, we agree with the position taken by the Commission in the court below that an issue of fact was presented by the question whether the respondents' advertisements indicated a preference. Hence, this is not a proper case for the application of a per se rule. We think application of a per se rule should be reserved for those instances where there can be no doubt that a discriminatory preference is indicated, else there is danger of prohibiting "nondiscriminatory as well as discriminatory advertisements." *Spann* v. *Colonial Village, Inc.*, 662 F.Supp. 541, 545 (D.D.C. 1987).

■ The advertising provisions of the Virginia Fair Housing Law and the federal Fair Housing Act generally parallel one another. " '[A] violation [of the federal Fair Housing Act] is proven if '[t]o *an ordinary reader* the natural interpretation of the advertisements . . . is that they indicate a . . . preference in the acceptance of tenants.' " *Saunders* v. *General Services Corp.*, 659 F.Supp. 1042, 1058 (E.D. Va. 1987) (*quoting United States* v. *Hunter*, 459 F.2d 205, 215 (4th Cir.), *cert. denied*, 409 U.S. 934 (1972)) (emphasis added). Another court has put the test in terms of the effect an advertisement has upon "*a reasonable person . . . who is seeking housing.*" *Heights Community Congress* v. *Hilltop Realty, Inc.*, 629 F.Supp. 1232, 1250 (N.D. Ohio 1983) (emphasis added).

■ We think that ordinary and reasonable persons could read the advertisements in dispute without taking offense and, consequently, could disagree on the question whether the advertise-

ments indicate a preference. Hence, there was presented to the trial court a typical question for resolution by a trier-of-fact. Accordingly, we hold that it was not error for the trial court to treat as a factual matter the question whether the respondents' advertisements violated Code § 36-88(3).[8]

■ The Commission argues, however, that the trial court erred in holding that the provisions of Code § 36-88(3) are penal in nature and should be construed strictly against the Commission and favorably to the liability of the respondents. The Fair Housing Law is remedial in nature, the Commission argues, and, therefore, should be liberally construed in furtherance of its purpose "to eradicate all incidents and badges of discrimination for the common good of all citizens in Virginia."

We will assume, without deciding, that the Fair Housing Law is remedial in nature and should be liberally construed. Still, this does not change our view that it was a factual matter whether the respondents' advertisements violated Code § 36-88(3). We think that even under a liberal interpretation of the Fair Housing Law, ordinary and reasonable persons could differ on the question whether the respondents' advertisements indicated a preference, leaving the issue one for determination by a trier-of-fact. Hence, the trial court's holding that the statute is penal in nature, if erroneous, was at most harmless error.

■ The Commission also claims that the trial court erred in giving weight to the disclaimer contained in the respondents' advertisements. All the trial judge said on the subject, however, was this: "Assuming, arguendo, that one could possibly perceive an undertone suggesting discrimination [in the caricature of a fish encompassing the words "Jesus Is Coming"], such a perception would be destroyed by the disclaimer." In our opinion, this is error *de minimis*, if error at all, and not ground for reversal.

■ The Commission further contends that the trial court erred in its action concerning a so-called "Dear Pastor" letter, copies of which Paul Lotz sent on his realty company's stationery to the pastors of "approximately 175 different churches." The letters, which were critical of the Anti-Defamation League, apparently were sent in 1981, after the League had filed its 1980 complaint

[8] In connection with its per se argument, the Commission suggests that the trial court erred in failing to consider or give weight to certain guidelines promulgated by the United States Department of Housing and Urban Development pursuant to the federal Fair Housing Act. No assignment of error, however, reaches this point.

against Lotz. The trial court admitted the letter for the limited purpose of showing it motivated the League's filing of an additional complaint.

The Commission argues that the use of the letter should not have been limited and that it should have been admitted as evidence of Paul Lotz's intention regarding Jews and the manner in which he felt Jewish people should be treated. As the respondents point out, however, the Commission filed a motion in the trial court seeking to exclude as irrelevant and inadmissible "[a]ll evidence of whether Paul Lotz or Lotz Realty Company have personally discriminated or intend to discriminate against anyone." And, in arguing for admission of the "Dear Pastor" letter itself, counsel for the Commission stated that "[w]hat was in Paul Lotz' mind for the sake of the statute you're going under is irrelevant."

Furthermore, in arguing in its appellate brief for a per se rule with respect to the respondents' advertising, the Commission says that "[n]either Lotz's personal beliefs nor his intentions are relevant to a determination of whether these advertisements indicate an intention on his part to grant a preference to Christians." We take the Commission at its word that Lotz's intention is irrelevant and hold the trial court did not err in limiting use of the "Dear Pastor" letter.

The Commission also contends that the trial court erred in refusing to allow it to present expert testimony at the January 10, 1985 hearing on the question whether the respondents' advertisements indicated a preference. The court had allowed such testimony at the August 14, 1984 hearing, but reversed itself later, stating: "Based upon the issue in this case, experts can't [provide] anything that the jury could not determine within their own knowledge. Experts are not needed."

We agree with the trial court. "It is well settled that expert evidence concerning matters of common knowledge or those as to which the jury are as competent to form an accurate opinion as the witness is inadmissible." *Venable* v. *Stockner*, 200 Va. 900, 904, 108 S.E.2d 380, 383 (1959). Furthermore, whether the respondents' advertisements indicated a preference was the ultimate question in the case, and expert testimony is inadmissible on such a question. *Cartera* v. *Commonwealth*, 219 Va. 516, 519, 248 S.E.2d 784, 786 (1978).

The Commission's final contention concerns the trial court's award of $14,080.95 in attorney's fees and costs to the respon-

dents. The award was made partly under the authority of 42 U.S.C. § 1988 and partly under Va. Code § 9-6.14:21 of this State's Administrative Process Act.

We think that the award was erroneous. A party is entitled to an award of attorney's fees under 42 U.S.C. § 1988 if he is a prevailing party in an action to enforce the provisions of 42 U.S.C. § 1983. One is a prevailing party if he succeeds on "any significant issue in litigation which achieves some of the benefit [he] sought in bringing suit." *Hensley* v. *Eckerhart*, 461 U.S. 424, 433 (1983). But a party is not entitled to attorney's fees under § 1988 if he succeeds only on "a nonfee claim" even though he presents another claim that may have been cognizable under § 1983. *Smith* v. *Robinson*, 468 U.S. 992, 1015 (1984).

Here, the respondents asserted a claim to relief under § 1983 by way of their cross-bill, in which they sought a declaratory judgment on the sole ground that they had a constitutional right "to employ the slogans and symbols utilized in [their letterhead] in the course of their real estate business." The trial court held that the respondents could lawfully utilize the letterhead, but the holding was based upon the Commission's failure to carry its burden of proving that the letterhead indicated a discriminatory preference and not upon the respondents' asserted constitutional right. Hence, the respondents did not succeed on any significant issue raised in their cross-bill, were not prevailing parties within the intendment of § 1988, and are not entitled to attorney's fees under that section.

The respondents argue that federal decisions have allowed fees under § 1988 when a court bypasses constitutional issues and disposes of a case on statutory grounds. The respondents asserted no statutory grounds in their cross-bill, however, so the federal decisions do not support their claim.

A party is entitled to recover "reasonable costs and attorney fees" under Va. Code § 9-6.14:21 if he substantially prevails on the merits of a civil case brought against an agency under § 9-6.14:15 et seq. and § 9-6.14:20 et seq., "*and the agency is found to have acted unreasonably.*" (Emphasis added.) The Commission has assigned several reasons for setting aside the award made by the trial court. The most apparent reason, however, is that the court did not find the Commission had acted unreasonably, and the record would not have supported such a finding in any event.

In the view we have taken of this case, it has been unnecessary to consider the constitutional questions raised by the respondents' assignment of cross-error. Accordingly, we express no opinion upon those questions.

For the reasons assigned, we will reverse the judgment of the trial court to the extent it allowed the respondents to recover attorney's fees and costs in the prosecution of their cross-bill, and we will enter final judgment in favor of the Commission in that respect. We will affirm the judgment in all other respects.

*Affirmed in part, reversed in part, and final judgment.*