# Frank Linwood Elam

## v.

## Commonwealth of Virginia

Record No. 840465

Decided March 8, 1985, at Richmond

Present: All the Justices

*James E. Ghee* for appellant.
*Marla Lynn Graff, Assistant Attorney General (Gerald L. Baliles, Attorney General,* on brief), for appellee.

POFF, J., delivered the opinion of the Court.

A jury convicted Frank Linwood Elam under separate indictments, tried jointly, charging rape and breaking and entering with intent to commit rape. Confirming the verdict, the trial court imposed penitentiary sentences of life and 20 years.

In his appeal of the rape conviction, Elam contends that "the prosecution failed to show penetration". Otherwise, he does not challenge the sufficiency of the evidence as to either conviction. Elam broke and entered the prosecutrix's mobile home, wakened her in her bed, "jerked the cover off", told her that "he was mean as the devil and he'd do something to hurt [her]", and "jerked off some of [her] clothes." The prosecutrix, 87 years of age and crippled, "commenced yelling" and tried to resist the assault, but her efforts "didn't do no good."

As proof that penetration never occurred, the defendant relies upon the following excerpt from the transcript of the victim's testimony:

Q. All right, after he jerked off your clothes, what did he do?

A. Well, he didn't rape me; I don't think he raped me; but it seemed like they thought he did.

Q. Did he try to put his penis into your sexual organ?

A. Yes.

Q. But you don't know whether he got it in or not?

A. No, I don't, but it liked to scared me to death.

We agree with the defendant that this testimony, while sufficient to prove attempted rape, is insufficient, standing alone, to prove rape. But it does not stand alone, and we do not agree that it forecloses proof of penetration.

To the lay person, rape is generally construed to mean total consummation of an act of sexual intercourse, committed forcibly and with complete penetration. But the law does not define the crime in the vernacular. We have recently summarized and reaffirmed the legal principles. Penetration by a penis of a vagina is an essential element of the crime of rape; proof of penetration, however slight the entry may be, is sufficient; evidence of ejaculation is not required; and no hypothesis that penetration was accomplished by some object other than a penis is sufficient to reverse a conviction unless it reasonably flows from the evidence itself rather than the imagination of counsel. *Tuggle* v. *Commonwealth,* 228 Va. 493, 323 S.E.2d 539 (1984). Given the circumstantial evidence of penetration adduced by the Commonwealth in this case, the jury could rationally discount the uncertainty reflected in the prosecutrix's testimony as the product of lay ignorance of these legal principles.

The medical and forensic evidence was compelling. The examining physician testified that he found a vaginal laceration "about the length of my little finger in the vertical position, and about twice that in the horizontal position." He said that "half of the vertical tear, was outside of the entrance, and the other half was inside." The "dome of the vagina . . . [was] reddened as if it had been struck by something." Type A blood, consistent with that of the prosecutrix and inconsistent with that of the defendant, was found on the bed, on the defendant's clothes, and in his pubic area. There was no evidence of ejaculation in or about the vagina, but a blanket contained the residue of seminal fluid.

There is nothing in the record to account for the laceration and bleeding other than the prosecutrix's testimony that the defendant

attempted forcible intercourse, and we hold that the evidence of penetration was fully sufficient to support the rape conviction.

Attacking both convictions, Elam argues that he was denied his Sixth Amendment right to trial by an impartial jury. He challenged the impartiality of one member of the venire because she was the sister of a *former* Commonwealth's Attorney and that of four other members because they were *former* clients of the incumbent Commonwealth's Attorney. All five were interrogated individually by the court and defense counsel, each declared that his relationship would not affect his ability to give the defendant a fair trial, and the court overruled the defendant's several objections.

■ Affirming the common-law rule, we have held that a person is not disqualified to sit as a juror in a civil case solely because he is related to counsel for one of the parties. *Petcosky* v. *Bowman,* 197 Va. 240, 253-54, 89 S.E.2d 4, 14 (1955) (first cousin). We have never had occasion to consider whether that rule applies in a criminal case, and we do not now. The prospective juror was not related to the attorney representing the Commonwealth in this case, and her answers on *voir dire* contradict any suspicion of bias.

■ There is no merit in Elam's challenge to the other four veniremen. The question is squarely controlled by our decision in *Calhoun* v. *Commonwealth,* 226 Va. 256, 263, 307 S.E.2d 896, 900 (1983), where we said that "we will not adopt a *per se* rule disqualifying a prospective juror solely on the ground that sometime in the past the Commonwealth's Attorney had represented him."

Finding no error in the court below, we will affirm the judgments in both cases.

*Affirmed.*